FILED by PG D.C.

JUL 2 8 2015

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S. D. of FLA. – MIAMI

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

12-CR-20482-KMM

UNITED STATES OF AMERICA,

        Plaintiff,

v.

TROY DOUGLAS BRIMM,

        Defendant.
_____/

### SECOND SUPPLEMENT TO [177] MOTION FOR NEW TRIAL AND INCORPORATED MEMORANDUM OF LAW

    COMES NOW, Troy Douglas Brimm, Defendant in the above styled action, and submits this second supplement[1] to his original motion for new trial (D.E. 177), filed on June 24, 2014, which is pending before this Court.

    Since the filing of the original motion and first supplement, Brimm has received additional evidence in the form of an affidavit, which he wishes to include for this Court's consideration in the interest of justice. Attached as Exhibit K is an affidavit from J.R.P., a material Government witness at Brimm's trial.

I.    In his affidavit, made under oath in the Dominican Republic, J.R.P. recants his trial testimony used to convict Brimm; admits that his trial testimony was perjured; and explains that his motive for doing so was due to threats,

---

[1] Brimm filed his first supplement on April 15, 2015.

coercion, and intimidation by Dominican police, specifically Sgt. Rosario and Lt. Galvez, U.S. and Dominican prosecutors, and Diomedes Genao, the father of D.G.M., the other material witness in the case.[2] J.R.P.'s statements do not reside in a vacuum; they are corroborated by the affidavits of seven other witnesses (Exh. E-J); and they are consistent with statements that D.G.M., J.R.P. himself, J.R.P.'s brother J.A.R.P., and Carlos Marte made to prosecutors before trial (Exh. A-D).

1. The allegations of sexual abuse made by D.G.M. and J.R.P. against Brimm are false.

J.R.P. states under oath that, "at no time did [Brimm] go too far with me[.]" (Exh. K). "In regards to the accusation against Mr. Troy Brimm of the alleged sexual violation of my person, it's all a lie." Id. "At no time did [Brimm] go too far, nor even hint to us any disrespectful acts." Id. "I really regret having testified against him saying untruthful things." Id.

These statements are consistent with statements made by D.G.M. in an interview with Yolanda Dorville, Forensic Psychologist, and Assistant U.S. Attorney ("AUSA") Maria Medetis at the Ministerio Publico in Puerto Plata, Dominican Republic. Ms. Dorville interviewed D.G.M. for "approximately 20-25 minutes." (Exh. A, p. 1). During this interview "D.G.M. told Dorville that nothing happened to him." Id., p. 2. "D.G.M. did not disclose any sexual abuse[.]" Id. "D.G.M. said that he was not sexually abused[.]" Id. After conferring with J.R.P., however, D.G.M. changed his account to coincide with J.R.P. Once J.R.P. left the room, and Ms. Dorville again asked D.G.M. "what

---

[2] To clarify, "D.G.M." are the correct initials. "D.S.G." was used inadvertantly in the first supplement, but refers to the same person.

happened to him with Brimm," D.G.M. did not make any allegations that he and Brimm had engaged in sexual activity, although he had every opportunity to do so removed from J.R.P.'s influence.

Notable, too, is that Ms. Dorville's interview with J.R.P. and D.G.M. took place on May 3, 2012, in Puerto Plata, the same date and location where J.R.P. claimed he was threatened by police. (Exh. C). Also present in Puerto Plata with D.G.M. and J.R.P. on that day were D.G.M.'s father, Diomedes Genao, and Sgt. Rosario of the Dominican National Police.

J.R.P.'s admission that the allegations of sexual abuse were false is corroborated by the testimony given by six other witnesses.

Florentino Polanco, Brimm's criminal attorney in the Dominican Republic, stated that the case against Brimm in the Dominican Republic for the sexual abuse of minors was dismissed as "inadmissible, wrongly based and lacking legal basis[.]" (Exh. E). "It was able to be proven that it was a blackmail from the parents of the minors, since the legal medical tests to which the minors were exposed were negative[.]" Id. "[I]t was evidenced that he had no responsibility over the charges made against him[.]" Id. And that Brimm "did not commit those events, and that his innocence was proven in the Dominican courts[.]" Id.

Yamilka Brito stated that "she never saw [Brimm] cross the line, nor insinuate anything to her, nor bother any child." (Exh. F). The "legal medical exams" all "had negative results[.]" Id. And, "there was no relationship between [Brimm] and those children[.]" Id.

Kelvin Pichardo stated that Brimm "never hurt ... [D.G.M.] ... nor [J.R.P]" (Exh. G). Elia Pichardo and Facunda Diaz, too, stated that Brimm is in jail and "serving a sentence for something he did not do[.]" (Exh. H).

Carlos Marte, the only available defense witness at trial, but who was

- 3 -

hidden by the Government, stated that D.G.M. and J.R.P. "lied in their testimony about the alleged sexual relations for which Mr. Troy Brimm was accused." (Exh. J). In Mr. Marte's presence Dominican police released Brimm "because they didn't find any evidence in the case of the accusations of sexual violations against [D.G.M.] and [J.R.P.]." Id. "[Brimm] didn't hurt the kids," and "nothing [Brimm] has been accused of in that case of sexual violation is real[.]" Id.

2.  The motive for D.G.M. and J.R.P. to testify falsely was originally to extort money from Brimm.

J.R.P.'s affidavit confirms that "Mr. Diomedes Genao's plan was to extort Troy, taking from him a large amount of money." (Exh. K). "Also, Diomedes Genao told me that if I said that Mr. Troy Brimm had raped me, my family would get a lot of money." Id. This is consistent with J.A.R.P.'s statement made to DHS/HSI Forensic Interviewer Laura Frescas and AUSA Medetis that "now [Brimm] has to give a million. ... One million he has to give now." (Exh. B). J.A.R.P. then asks Ms. Frescas if she understands, and Ms. Frescas replies, "Yes. Okay." Id. Moreover, the existence of the extortion plot is corroborated by six other witnesses.

Attorney Polanco, an eyewitness to the events taking place at the District Attorney's office in Puerto Plata, stated that "it was able to be proven that it was a blackmail from the parents of the minors[.]" (Exh. E).

Yamilka Brito, also an eyewitness in Puerto Plata, stated that "she was present when the parents of the children appeared, and one of the children's parents asked [Brimm] for a sum of money, as a form of extorsion [sic], the sum of Twenty Four Thousand dollars (US$24,000.00)[.]" (Exh. F). Ms. Brito also witnessed another parent tell Brimm that "[Brimm] also had to give him

Twenty Eight Thousand gold Dominican pesos (RD$28,000.00)." Id. At the exchange rate at the time of RD$40 to US$1, the amount totalled RD$988,000, almost 1,000,000 pesos, the same amount that J.A.R.P. told prosecutors Brimm would have to pay. Ms. Brito went on to state that a parent of D.G.M. or J.R.P. would take Brimm "before Dominican justice" if Brimm "did not give into [sic] what he was asking for[.]" Id. Ms. Brito stated that this parent has "the habit of performing this type of blackmail to foreigners in Cabarete." Id. And, that it is an "illegal way for the parents to obtain easy money, hurting foreigners that come to Cabarete." Id.

Elia Pichardo and Facunda Diaz stated that "everyone knows who are the people that hurt [Brimm], as they are imposed to do this, and additionally there is evidence that what they intended was to obtain money[.]" (Exh. H).

Jelson Pichardo stated that D.G.M. and J.R.P. "said things that are not in the testimony about the alleged sexual relations of which [Brimm] was accused." (Exh. I). That "it is public knowledge that [Diomedes Genao] is an extortionist. He did it before with his daughter, accusing a foreigner of injuring her in order to extort the foreigner's money; and in this instance he wanted to do the same thing to [Brimm]." Id.

Carlos Marte also knows D.G.M.'s father to be "an extortionist." (Exh. J). "[Genao] did this before with his daughter, and this time he wanted to get Troy Brimm's money." Id.

3. D.G.M. and J.R.P. testified falsely under extreme duress.

There is an abundance of newly discovered evidence that D.G.M. and J.R.P. were coerced by direct threats and intimidation to testify falsely at trial. In J.R.P.'s affidavit he states unequivocally, "I testified against [Brimm] because the Dominican police, the Dominican and United States prosecutors,

- 5 -

and [D.G.M.'s] father, Diomedes Genao, coerced me to say all those lies against him[.]" (Exh. K). Indeed, J.R.P. told Ms. Frescas and AUSA Medetis the same thing before trial: "The police told me that they would do something to me if I didn't talk. ... They told me what they would do to me if I didn't say that I had sex with [Brimm]." It is reasonable to presume that the "something" wasn't going to be pleasant.

Ms. Medetis also knew from her conversation with Carlos Marte before trial that D.G.M.'s father "forced him to say 'whatever' 'like sex' to get money out of [Brimm]." (Exh. D). This is consistent with D.G.M.'s own admission to Kelvin Pichardo after trial where D.G.M. stated that it "would be difficult for him [if he helped Brimm] because he would have problems with his father if he did that, his father has already threatened to beat him and throw him out of the house if he doesn't say what his father wants him to say in the event he changes <u>his father's</u> story[.]" (Exh. G) (emphasis added). Jelson Pichardo corroborates this in his testimony: "[D.G.M.'s] father, Diomedes Genao, threatened both boys to say that [Brimm] had sexual relations with them despite it being untrue." (Exh. I).

J.R.P. goes on to state that he was taken to the United States against his will. "The United States prosecutors and Mr. Diomedes Genao pressured me to testify against Mr. Troy Brimm, putting words in my mouth, that is, telling me what I had to say." (Exh. K). "In the Dominican Republic Mr. Diomedes Genao, together with the police, Sgt. Rosario and Lt. Galvez, pressured me to make claims against Mr. Troy Brimm because he wanted to get money[.]" Id. It is not likely that J.R.P. understood that he was not under subpoena and under no obligation to come to Miami to testify. Moreover, AUSA Medetis already knew that the Dominican police had "put words in his mouth." He told her that the police in Puerto Plata "said that [he] had sex with [Brimm],"

- 6 -

(Exh. C), and they made it implicitly clear what they would do to him if he didn't say so. Testimony from Carlos Marte shows that Genao also told D.G.M. to say "whatever" "like sex" (Exh. D) in order to extort Brimm. D.G.M. himself told Kelvin Pichardo after trial that neither he nor J.R.P. "was able to say anything contrary to what [his] father told them to say[.]" (Exh. G).

J.R.P.'s experience in Miami before trial is similar to that of Mr. Marte. J.R.P. states that "the United States prosecutors talked to me every single day dictating what I should say." (Exh. K). Mr. Marte states in his affidavit that he, too, was pressured by prosecutors "every single day to testify against [Brimm]." (Exh. J). Mr. Marte also corroborates J.R.P.'s testimony that "the prosecutor and Diomedes Genao threatened [him and D.G.M.] and told them what they should say[.]" Id.

While it is not clear from the record whether or not Mr. Genao accompanied D.G.M. and J.R.P. to Miami, the record does show that Sgt. Rosario and D.G.M.'s mother, Maria Martinez, were present. Sgt. Rosario, in fact, was a Government witness. While in the company of Mr. Genao's wife, the same policeman who threatened them, four zealous prosecutors eager for a conviction, and presumably under Mr. Genao's influence either by phone or through Ms. Martinez, it's easy to imagine the scope of the intimidation, both real and perceived, that D.G.M. and J.R.P. were under. J.R.P. says, "[Prosecutors] brought me [to Miami] 8 days before the trial in order to prepare me to testify against Mr. Troy Brimm, because they wanted to convict him." (Exh. K).

Mr. Marte, who was not intimidated by prosecutors, was neatly hidden from defense counsel and the Court, but what awaited D.G.M. and J.R.P. once they returned to the Dominican Republic was made crystal-clear to them before they ever arrived in Miami. D.G.M. and J.R.P. were given no opportunity to meet with defense counsel; they had no advocate. For several days they were

coerced by their own families and corrupt police who suborned their perjurious testimony, and pressured by prosecutors who were — certainly in the eyes of D.G.M. and J.R.P. — tacitly complicit as evidenced by their knowledge before trial of both the extortion scheme and the threats made to J.R.P. Both he and D.G.M. were between the proverbial rock and a hard place. In other words, they were unquestionably under extreme duress well before and during trial.[3]

4. Diomedes Genao is a known extortionist.

This wasn't Mr. Genao's first rodeo. According to several witnesses, Mr. Genao is a known extortionist whose modus operandi is to make false allegations of sexual conduct with his children in order to extort money from foreigners.

Carlos Marte told prosecutors before trial that Mr. Genao "once locked his daughter in a room with a tourist so that he could get money from the tourist." (Exh. D). Presumably, Mr. Genao would then "look" for his "missing" daughter — with the help of corrupt police — and then "catch" the tourist "in flagrante delicto." Mr. Genao would then extort a sum of money from said tourist to make the allegations of sexual abuse "disappear," a scheme not incoincidentally similar to the one perpetrated on Brimm.

Florentino Polanco stated in his affidavit that it was "proven that it was a blackmail from the parents of the minors[.]" (Exh. E). Ms. Brito was present and an eyewitness to the parents' extortion attempt as well. Ironically, had Brimm simply paid the ransom, he would never have been prosecuted. Ms. Brito

---

[3] Their demeanor at trial, too, was indicative of duress on the witness stand. Their responses to questions were strained and often contradictory. Under cross-examination they often hesitated — often several minutes — before responding.

goes on to state that one of the parents, presumably Mr. Genao, has a "bad history ... of performing this type of blackmail [on] foreigners in Cabarete." (Exh. F). Elia Pichardo and Facunda Diaz in their affidavit state that "everyone knows who are the people that hurt [Brimm], as they are imposed to do this, and additionally there is evidence that what they intended was to obtain money[.]" (Exh. H). Jelson Pichardo states in his affidavit that it is "public knowledge" that Mr. Genao "is an extortionist. He did it before with his daughter, accusing a foreigner of injuring her in order to extort the foreigner's money, and in this instance he wanted to do the same thing to [Brimm]." (Exh. I). And Carlos Marte states that he, too, has knowledge that Mr. Genao "is an extortionist. He did this before with his daughter, and this time he wanted to get [Brimm's] money." (Exh. J). In fact, according to Mr. Marte, it was Mr. Genao who made the allegations against Brimm, not D.G.M. or J.R.P. According to Mr. Marte, after Sgt. Rosario and Lt. Galvez "found" Brimm "in flagrante delicto" at his apartment they released him, there being no evidence of sexual conduct. It was only afterward that "Mr. Diomedes Genao arrived saying not to let [Brimm] go free, saying that Troy was guilty[.]" Id. Mr. Genao even arranged <u>in advance</u> of Brimm's arrest for his friend, Edgar Thomas, a television news journalist, to videotape the event. (See D.E. 66, p. 39:24-40:2).

II. MEMORANDUM OF LAW

1. Standard of review for recanted testimony.

The former Fifth Circuit in <u>Martin v. United States</u> explained that "it is the duty of the trial court to grant a new trial, where a witness at the original trial subsequently admits on oath that he committed perjury, or even that he was mistaken in his testimony, provided such testimony related to a material issue, and was not merely cumulative." 17 F.2d 973, 976 (5th Cir. 1927).

The Seventh Circuit, adopting Martin, developed the well-settled standard used today when considering the impact of recanted trial testimony. A court must consider whether: (1) it is reasonably well satisfied that testimony given by the witness was false; (2) the jury might have reached a different conclusion absent the false testimony or if it had known that the testimony was false; and (3) the defendant was taken by surprise and was unable to meet the false testimony, or did not know of the falsity until after trial. See Larrison v. United States, 24 F.2d 82 (7th Cir. 1928).

The Sixth Circuit, after analyzing the Larrison test noted, however, that Martin expressly rejected the third-prong requirement of surprise:

> There is no way for a court to determine that the perjured testimony did not have controlling weight with the jury, and, notwithstanding the perjured testimony was contradicted at the trial, a new light is thrown on it by the admission that it was false; so that, on a new trial, there would be a strong circumstance in favor of the losing party that did not exist, and therefore could not have been shown, at the time of the original trial.

Martin, 17 F.2d at 976. In applying the Larrison test, then, the Sixth Circuit decided that, in cases where all of the testimony given by a witness against the defendant is recanted, the requirement of the third prong is not "pertinent." Gordon v. United States, 178 F.2d 896, 900 (6th Cir. 1949).

In determining the probability of whether the jury might have reached a different conclusion, the Ninth Circuit has said, "Evidence that the government's star witness lied under oath about the critical issues in the case does indeed give rise to such probability." United States v. Sanchez, 379 Fed.Appx. 551, 554 (9th Cir. 2010) (unpublished). See also United States v. Krasny, 607 F.2d 840, 845 (9th Cir. 1979):

> When a key witness recants his or her testimony in its entirety, or the bulk of a key witness' testimony is otherwise shown to be false, a district court may well find it probable that an acquittal would result on retrial, and may not so find when a rather inconsequential witness has prevaricated on a minor or collateral issue.

- 10 -

2.  Due process and prejudice.

Due process is invoked where, by active conduct or connivance of the prosecution, a conviction is obtained through the use of perjured testimony. <u>Mooney v. Holohan</u>, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935). In addition, the Supreme Court has recognized that due process would be implicated where responsible officials of the Government knowingly used false testimony which was coerced from a witness to convict a defendant. <u>Hyster v. Florida</u>, 315 U.S. 411, 62 S.Ct. 688, 86 L.Ed. 932 (1942).

The Second Circuit has similarly explained that "[i]t is simply intolerable ... if a state allows an innocent person to remain incarcerated on the basis of lies." <u>Sanders v. Sullivan</u>, 863 F.2d 218, 224 (2nd Cir. 1988) (reversing denial of habeas corpus relief and holding that the petitioner's due process rights were violated when the petitioner in that case was convicted based on the material testimony of a witness who recanted); see also <u>United States v. Wallach</u>, 935 F.2d 445, 473 (2nd Cir. 1991) (holding that the perjury by a key government witness, irrespective of whether the government knew of the perjury at the time of trial, "infected the trial proceedings" and required reversal).

And Chief Justice Warren, who wrote the majority opinion in <u>Mesarosh v. United States</u>, explained the impact tainted testimony has on the fairness of a trial — a fundamental tenet of due process:

> [The chief prosecution witness], by his [tainted] testimony, has poisoned the water in the reservoir, and the reservoir cannot be cleansed without draining it of all impurity. This is a federal criminal case, and this Court has supervisory jurisdiction over the proceedings of the federal courts. If it has any duty to perform in this regard, it is to see that the waters of justice are not polluted. Pollution having taken place here, the condition should be remedied at the earliest opportunity.

352 U.S. 1, 14, 77 S.Ct. 1, 8 (1956).

The Supreme Court has held recantations to be evidence of perjury, Dobbert v. Wainwright, 468 U.S. 1231, 105 S.Ct. 34, 82 L.Ed.2d 925 (1984), and due process demands a new trial "when a defendant was unable to receive a fair trial and suffered actual, compelling prejudice." United States v. Pedrick, 181 F.3d 1264, 1267 (11th Cir. 1999).

It is incontrovertible that J.R.P.'s perjured testimony — and D.G.M.'s as well — and the outrageous conduct of prosecutors and law enforcement resulted in a trial that was manifestly unfair, and, as a result, Brimm suffered actual, compelling prejudice.

III. PAPERS SUPPORTING MOTION

This motion is based on the original Motion for New Trial and Incorporated Memorandum of Law, the (First) Supplement to [177] Motion for New Trial and Incorporated Memorandum of Law, this Second Supplement to [177] Motion for New Trial and Incorporated Memorandum of Law, Exhibits A-K, and all of the papers, pleadings, and other records on file in this action.

WHEREFORE, Brimm respectfully renews his prayer that this Honorable Court will GRANT the motion and (a) vacate his conviction and order a new trial in the interest of justice, or, in the alternative, (b) appoint counsel and order an evidentiary hearing on the motion.

Executed this 21st day of July, 2015.

Respectfully submitted,

Troy Brimm, Defendant
USP Tucson 85908-022
PO Box 24550
Tucson, AZ 85734-4550

- 12 -

## CERTIFICATE OF SERVICE

I certify, under penalty of perjury, that I served this SECOND SUPPLEMENT TO [177] MOTION FOR NEW TRIAL AND INCORPORATED MEMORANDUM OF LAW on the Clerk of the Court by placing a copy of said supplement in the legal mail receptacle at the U.S. Penitentiary, Tucson, having affixed sufficient U.S. First Class postage for mailing.

_July 21, 2015_
Date

_Troy Brimm_
Troy Brimm, Defendant
USP Tucson 85908-022
PO Box 24550
Tucson, AZ 85734-4550

## EXHIBITS

| Exhibit | Description |
| --- | --- |
| K | Declaración Jurada (Sworn Statement) of J.R.P. w/English translation, 4 pp. |

DECLARACIÓN JURADA

En la ciudad y municipio de Jamao al Norte, Provincia Espaillat, República Dominicana, a los veinticinco (03) días del mes de febrero del año dos mil quince (2015). Por ante mi **Lic. JUAN BAUTISTA JOLINGER LANTIGUA**, Dominicano, mayor de edad, soltero, abogado, titular de la cedula de identidad y electoral número 061-0015798-8, República Dominicana, Notario Público, de los de número para el Municipio de Jamao Al Norte, Provincia Espaillat, registrado bajo el No. 5587, con estudio profesional abierto en la calle Principal de Jamao al Norte No. 14, compareció libre y voluntariamente el señor **JOSE ANTONIO RODRIGUEZ PERALTA**, dominicano, mayor de edad, soltero, Estudiante. Fecha de nacimiento veinticuatro (24) días del mes de diciembre del año 1995, cedula No 402-2228123-6, domiciliado y residente en el de Distrito Municipal de Veragua, Provincia Espaillat y de paso por en esta ciudad de Jamao al Norte, Republica Dominicana, al tenor del presente acto declaro **BAJO LA FE DEL JURAMENTO Y ADVERTIDO DE LA LEY DE ESTADOS UNIDOS**, que castiga el perjurio, lo siguiente: **PRIMERO:** Juro solemnemente conocer por mas cinco años al señor **TROY BRIMM, americano mayor de edad pasaporte no. 445454522 que dicho** señor es una persona muy buena, en ningún momento se propaso con migo, siempre me ayudo, me alimento cuando yo tenía hambre, **SEGUNDO,** en cuanto a la acusación en contra del señor **TROY BRIMM** de la supuesta violación sexual a mi persona, todo es mentira, yo testifique en contra del señor **TROY BRIMM** por que la policía dominicana, la fiscalía dominicana y de Estados unidos, y el padre de Dahian, **Diomedes Genao**, me obligaron con amenaza a decir todas esas mentiras en contra de él, una persona que se portó muy bien conmigo y mis amigos, siempre me daba buenos consejos, pero el plan del señor **Diomedes Genao** era, extorsionar a **TROY** quitándole una gran cantidad de dinero y se puso de acuerdo con la policía, el sargento **ROSARIO** Y el teniente **GALVEZ** para que me obligaran a decir que el señor **TROY BRIMM** había tenido o abusado sexualmente de mí, también **Diomedes Genao** me decía que si decía que el señor **TROY BRIMM** me había violado, a mi familia le daban mucho dinero, **TERCERO, me llevaron** a Estados unidos en contra de mi voluntad, los fiscales de Estados Unidos y el, el señor **Diomedes Genao** me presionaban para que testificara en contra del señor **TROY BRIMM,** poniendo palabras en mi boca, es decir diciéndome lo que tenía que decir, todo esto me ha hecho mucho daños, en la Escuela, en la sociedad en general, he sido objeto de burla, **CUARTO,** la noche que mi amigo **Dahian Smith Genao Martínez** y yo nos quedamos en el apartamento, el señor **TROY BRIMM** nos alimento, nos cuidó como si fuéramos sus hijos, en ningún momento se propaso ni siquiera nos insinuó actos dolosos en contra de la buena costumbre, al contrario estaba preocupado, por nosotros porque no estábamos con nuestros padres, **QUINTO,** En república dominicana el señor **Diomedes Genao conjuntamente con** la policía, el sargento **ROSARIO Y** el teniente **GALVEZ** me presionaban para que declarara en contra del señor **TROY BRIMM** porque quería conseguir dinero y la fiscalía de Estados Unidos todos los días hablaban con migo y median que tenía que decir, por eso me llevaron 8 dias ante del juicio para prepararme a declarar en contra del señor **TROY BRIMM,** porque querían condenarlo, me siento muy arrepentido de haber declarado en su contra diciendo cosas en contra de la realidad, esto le ha hecho mal a él, a mí y a otras personas que dependían de él. Por todo esto no quiero volver a pasar por esta situación, no quiero que me obliguen a volver a Estados Unidos y ningún otro tribunal.-------------------------------------------------------------------------------------

Sigue==============================

EXHIBIT K, Page 1 of 4

**SEXTO:** Que hago publica dicha declaraciones bajo la fe del juramento con la finalidad de dar garantía y seguridad de cuanto he expresado a cualquier autoridades pública y privada en cualquier parte del mundo. **SEPTIMO:** Que dicha declaración fueron hecha en presencia de los testigo los señores **PEDRO MENDEZ**, dominicano, mayor de edad, estado civil soltero, de profesión empleado privado, cedula personal de identidad y electoral número, 097-0016220-0, domiciliado y residente en la calle vera larga número (NS), sector Islabon, del Distrito municipal de Cabarete, Provincia de puerto plata, República dominicana, y **ALEXANDRA MINERVA MENDEZ**, dominicano, mayor de edad, estado civil soltero, de profesión empleado privado, portador de la cedula de identidad personal y electoral número 097-0016165-7, domiciliado y residente en, Distrito Municipal de Cabarete, Provincia Puerto Plata, República dominicana, y de paso ambos por esta oficina, testigos instrumentales requeridos al efecto, libre de las tachas y excepciones que establecen las leyes dominicanas, de todo lo cual he redactado el presente acto, en mi estudio, en el lugar y fecha antes indicado, lo cual después de leído por mí en alta voz a los comparecientes, quienes lo ratifican en señal de aprobación y firman en la única página de que consta, junto conmigo y por ante mí, notario público que doy fe y certifico.----------------------------------

_Jose Ant Rodriguez_                                                     _[signature]_

**JOSE ANTONIO RODRIGUEZ PERALTA**                    **PEDRO MENDEZ**

**DECLARANTE**                                                          **TESTIGO**

_Alexandra M. Mendz_

**ALEXANDRA MINERVA MENDEZ**

**TESTIGO**

Yo, Licenciado **JUAN BAUTISTA JOLINGER LANTIGUA**, Notario Público de los del Número para el Municipio de Jamao al Norte, Provincia Espaillat, con estudio profesional abierto de manera permanente en la calle principal No. 14, de esta ciudad de Jamao, **con Matricula del Colegio Dominicano de Notarios Inc., Número Cincuenta y Cinco Ochenta y Siete (5587);** titular de la cedula de identidad personal y electoral número 061-0015798-8, **CERTIFICO Y DOY FE:** Que las firmas que aparece más arriba fueron puestas en mi presencia y estudio indicado por los señores, **JOSE ANTONIO RODRIGUEZ PERALTA, PEDRO MENDEZ y ALEXANDRA MINERVA MENDEZ**, persona a quien identifico y sin tachaduras; quien me manifiesta que esa es la forma como acostumbra a firmar en todos los actos de su vida pública y privada, por lo cual se le debe dar fe y entero crédito, a los tres (03) días del mes de febrero del año Dos Mil quince (2015). ------------------------------------------------------

Lic. JUAN BAUTISTA JOLINGER L
Abogado notario

[Notary seal: BAUTISTA JOLINGER / NOTARIO PUBLICO / Jamao al Norte, Prov. Espaillat]

EXHIBIT K, Page 2 of 4

SWORN STATEMENT

In the city and municipality of Jamao al Norte, Espaillat Province, Dominican Republic, on the twenty fifth (03) [sic] day of the month of February of the year Two Thousand Fifteen (2015), before me, JUAN BAUTISTA JOLINGER LANTIGUA, Esq., Attorney at Law, an unmarried Dominican adult, holder of national identity and electoral card number 061-0015798-8, Dominican Republic, Notary Public for the Municipality of Jamao al Norte, Espaillat Province, registered under the No. 5587, with professional offices at Calle Principal No. 14, Jamao al Norte, appeared freely and voluntarily Mr. JOSE ANTONIO RODRIGUEZ PERALTA, an unmarried Dominican adult, student, date of birth the twenty fourth (24) day of the month of December of the year 1995, national identity card No. 402-2728173-6, domiciled and resident in the Municipal District of Veragua, Espaillat Province, and at the same time in this city of Jamao al Norte, Dominican Republic, professes the present action:

I declare, UNDER OATH AND NOTICE OF THE LAW OF THE UNITED STATES, which penalizes perjury, the following: FIRST: I solemnly swear to know for more than five years Mr. TROY BRIMM, an American adult, passport No. 445454522; that said gentleman is a very good person. At no time did he go too far with me. He always helped me. He fed me when I was hungry. SECOND: In regards to the accusation against Mr. TROY BRIMM of the alleged sexual violation of my person, it's all a lie. I testified against Mr. TROY BRIMM because the Dominican police, the Dominican and United States prosecutors, and Dahian's father, Diomedes Genao, coerced me to say all those lies against him, a person that carried himself very well with me and my friends. He always gave me good advice; but Mr. Diomedes Genao's plan was to extort Troy, taking from him a large amount of money and he conspired with the police, Sgt. ROSARIO and Lt. GALVEZ, in order to make me say that Mr. TROY BRIMM had sexually abused me. Also, Diomedes Genao told me that if I said that Mr. TROY BRIMM had raped me, my family would get a lot of money. THIRD: They took me to the United States against my will. The United States prosecutors and Mr. Diomedes Genao pressured me to testify against Mr. TROY BRIMM, putting words in my mouth, that is, telling me what I had to say. All this has hurt me a lot. In school, in society in general, I've been the butt of jokes. FOURTH: The night that my friend Dahian Smith Genao Martinez and I stayed at the apartment, Mr. TROY BRIMM fed us and took care of us like we were his kids. At no time did he go too far nor even hint to us any disrespectful acts. On the contrary, he was worried about us because we weren't with our parents. FIFTH: In the Dominican Republic Mr. Diomedes Genao together with the police, Sgt. ROSARIO and Lt. GALVEZ, pressured me to make claims against Mr. TROY BRIMM because he wanted to get money and the United States prosecutors talked to me every single day dictating what I should say. For that they brought me 8 days before the trial in order to prepare me to testify against Mr. TROY BRIMM, because they wanted to convict him. I really regret having testified against him saying untruthful things. This has hurt him, me, and the other people that depend on him. Because of all this I don't want to come back to relive this situation. I don't want them to make me come back to the United States for another trial.

(continued)

EXHIBIT K, Page 3 of 4

SIXTH: That I make public said statements under oath for the purpose of giving a guaranteed and certain account, and conveying same to any authority public and private anywhere in the world. SEVENTH: That said statements were made in the presence of the witnesses Mr. PEDRO MENDEZ, an unmarried Dominican adult, self-employed, national identity and electoral card number 097-0016220-0, domiciled and resident on Calle Vera Larga, Islabon sector of the Municipal District of Cabarete, Province of Puerto Plata, Dominican Republic; and Ms. ALEXANDRA MINERVA MENDEZ, an unmarried Dominican adult, self-employed, holder of national identity and electoral card number 097-0016165-7, domiciled and resident in the Municipal District of Cabarete, Province of Puerto Plata, Dominican Republic; both appearing at this office, who are instrumental witnesses required at the signing, and who are qualified under established Dominican laws.

To the foregoing in the present action that I have dutifully transcribed, in my office, at the aforementioned time and place, after which I read aloud to the appearing parties, who ratify it as a sign of approval and sign on the applicable page, together with me and before me, I bear witness and certify.

/s/
JOSE ANTONIO RODRIGUEZ PERALTA
Affiant

/s/
PEDRO MENDEZ
Witness

/s/
ALEXANDRA MINERVA MENDEZ
Witness

I, JUAN BAUTISTA JOLINGER LANTIGUA, Esq., Notary Public for the Municipality of Jamao al Norte, Espaillat Province, with duly authorized professional offices at Calle Principal No. 14, in this city of Jamao, graduate of the Dominican College of Notaries, Inc., Number Fifty Five Eighty Seven (5587), holder of national identity and electoral card number 061-0015798-8, CERTIFY AND BEAR WITNESS: That the signatures which appear above were made in my presence and duly indicated by Mr. JOSE ANTONIO RODRIGUEZ PERALTA, Mr. PEDRO MENDEZ, and Ms. ALEXANDRA MINERVA MENDEZ, as the persons so identified, who state to me that the form of their signatures is how they customarily sign for all purposes both public and private, for which I duly give full faith and credit, on the third (03) day of the month of February in the year Two Thousand Fifteen (2015).

/s/
JUAN BAUTISTA JOLINGER LANTIGUA, Esq.
Attorney at Law/Notary

EXHIBIT K, Page 4 of 4

Troy Brimm 85908-022
U.S. Penitentiary, Tucson
P.O. Box 24550
Tucson, AZ 85734-4550

7014 2870 0001 4643 5930

USPS INSPECTED BY

⟨⟩ 85908-022 ⟨⟩
U S Dist Court-S D Florida
Attn: Clerk of the Court
400 N Miami AVE
Room 8N09
Miami, FL 33128-7716

LEGAL MAIL